1  BONNETT, FAIRBOURN, FRIEDMAN
      & BALINT, P.C.
2  PATRICIA N. SYVERSON (CA SBN 203111)
   Manfred P. Muecke (CA SBN 222893)
3  600 W. Broadway, Suite 900
   San Diego, California 92101
4  psyverson@bffb.com
   mmuecke@bffb.com
5  Telephone:  (619) 798-4593

6  BONNETT, FAIRBOURN, FRIEDMAN
   & BALINT, P.C.
7  ELAINE A. RYAN (*To be Admitted Pro Hac Vice*)
   CARRIE A. LALIBERTE (*To be Admitted Pro Hac Vice*)
8  2325 E. Camelback Rd. Suite 300
   Phoenix, AZ 85016
9  eryan@bffb.com
   claliberte@bffb.com
10 Telephone:  (602) 274-1100

11 SIPRUT PC
   STEWART M. WELTMAN (*To be Admitted Pro Hac Vice*)
12 MICHAEL CHANG (*To be Admitted Pro Hac Vice*)
   17 North State Street
13 Chicago, Illinois 60602
   sweltman@siprut.com
14 mchang@siprut.com
   Telephone:   (312) 236-0000
15
   Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EUGENE ANTHONY and AMANDA HOLT, On Behalf of Themselves and All Others Similarly Situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>PHARMAVITE, LLC, a California limited liability company,<br><br>            Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE UNFAIR COMPETITION LAW, Business and Professions Code §17200** *et seq.* |

Plaintiffs Eugene Anthony and Amanda Holt bring this action on behalf of themselves and all others similarly situated against Defendant Pharmavite, LLC ("Pharmavite" or "Defendant") and state:

**NATURE OF ACTION**

1. Defendant manufactures, markets, sells, and distributes biotin supplements under its Nature Made brand. The three products are: (1) Biotin 2500 mcg; (2) Hair Skin Nails adult gummies[1]; and (3) Biotin 3000 mcg adult gummies (collectively, "Biotin Products").[2] On the front of the Biotin 2500 mcg product, Defendant represents that the product "May Help Support Healthy Hair, Skin & Nails". Similarly, on the front of both the Hair Skin Nails adult gummies and Biotin 3000 mcg adult gummies products, Defendant represents that the gummies "May help support healthy hair, skin and nails". These representations are collectively referred to as the "health benefit representations." Defendant's health benefit representations are false, misleading and reasonably likely to deceive the public.

2. The sole active ingredient in the Biotin 2500 mcg and 3000 mcg adult gummies products is biotin. Biotin is also the primary ingredient in the Hair Skin and Nails adult gummies product, which also contains 100 mg of vitamin C, and it is the ingredient that causes consumers to pay the amount that they do for this product as it retails for approximately $10.00 and the retail value of the 100 mg of vitamin C in this product is approximately $0.13.

3. Biotin is a colorless, water soluble B vitamin found in many foods, including several fruits and vegetables, liver, salmon, cereals, and other foods. Biotin serves as a biochemical co-factor (a helper of sorts) for certain enzymatic reactions and is involved in the metabolism of fats, carbohydrates, and amino acids.

4. The human body only requires a finite amount of biotin on a daily basis for it to perform its enzymatic functions as there are a finite number of enzymes that use biotin. Once there is sufficient biotin in the body, saturation occurs and the body just does not use this surplus

---

[1] This product contains 2500 mcg of biotin.
[2] Plaintiffs reserve the right to add additional products upon completion of discovery.

biotin. The Institute of Medicine has set an adequate intake (AI) for biotin at 30 micrograms (mcg) per day for people 19 years and older and even less for younger people. Dietary Reference Intakes for Thiamin, Riboflavin, Niacin, Vitamin B6, Folate, Vitamin B12, Pantothenic Acid, Biotin, and Choline ("IOM Dietary Reference Intakes"), INSTITUTE OF MEDICINE, at pp. 374, 382, *available at* http://www.nap.edu/catalog/6015/dietary-reference-intakes-for-thiamin-riboflavin-niacin-vitamin-b6-folate-vitamin-b12-pantothenic-acid-biotin-and-choline.[3] More than sufficient biotin is derived from the daily diets of the general U.S. population as healthy persons ingest anywhere from 30mcg-75mcg of biotin from their daily diets.

5. Defendant's Biotin Products contain what are known as pharmacologic doses of biotin that only benefit an infinitesimal number of people. In contrast, the 30 mcg AI for biotin is known as a physiologic dose.

6. The only persons who benefit from Defendant's pharmacological doses are persons with exceedingly rare conditions that cause frank biotin deficiencies – less than 0.000138 of the population. These people are born with a genetic defect that prevents their bodies from freeing biotin from the proteins to which it is bound in the foods we eat and thus causes a severe deficiency that results in hair loss and skin and nail problems. But for the remaining 99.99962 percent of the population (hereafter referred to as the general population), Defendant's mega-dose Biotin Products are unneeded, superfluous and completely worthless.

7. The general population can readily unbind biotin from the dietary proteins derived from the daily diet and, even then, when biotin is used for its enzymatic functions, the body recycles it for re-use. As such, the general population already have more than adequate, if not excessive, amounts of biotin derived from their diet and recycling. In fact, average biotin intake among North American adults is anywhere from 35-75 mcg per day. Yet, the 2500 mcg products are over 83 times more than the AI and the 3000 mcg product is 100 times more than the AI, far exceeding what would ever be needed for those in the general population – particularly since they

---

[3] In 2006, the IOM published an updated version of its 2000 report. With regard to the points cited herein from the 2000 report, the 2006 version does not materially alter them.

derive all that they need from their diets and recycling.

8. The function biotin performs in the human body explains why the general population does not require pharmacological doses of biotin and does not benefit from Defendant's mega-dose Biotin Products. Biotin is a co-factor for four or five carboxylase enzymes. A co-factor is a molecule that interacts with an enzyme to facilitate that enzyme's ability to carry out its biochemical functions. Biotin attaches itself to these enzymes, thereby helping each of them perform their respective functions. The body only needs a finite amount of these enzymatic functions performed on a daily basis and thus the need for biotin in the general population is finite and more than fully satisfied through diet and recycling. Thus, biotin is not a more is better substance, nor is more biotin needed from supplementation to complete these daily enzymatic functions. In short, once one consumes a sufficient amount of biotin, which is easily met by the general population in their everyday diets, the remainder becomes functionally superfluous and does not provide any additional health benefits and is ultimately excreted.

9. Therefore, with the exception of the rare conditions discussed above, for the general population the Biotin Products sold by Defendant are unneeded, superfluous and will not provide any benefits, let alone support healthy hair, skin and nails. That is because the general population already consumes sufficient, if not excessive, amounts of biotin from their daily diets.

10. In this regard, the 2000 Institute of Medicine Report from the National Academy of Sciences on *Dietary Reference Intakes for Thiamin, Riboflavin, Niacin, Vitamin B6, Folate, Vitamin B12, Pantothenic Acid, Biotin, and Choline* states that, "No definitive studies demonstrate evidence of biotin deficiency in normal individuals in any group resulting from inadequate intakes." IOM Dietary Reference Intakes p. 381. Thus, the IOM concluded in 2000, and this conclusion remains true today, that while there was a limited amount of information regarding biotin intakes this information indicates that "[T]here is little cause for concern about the adequacy of biotin intake for healthy people…" *Id.* at pp. 385-86. Since there is little concern for the adequacy of biotin intake for healthy people (e.g., people who do not have one of the rare conditions described above) and since the need for biotin is finite, Defendant's Biotin Products

- 3 -
Class Action Complaint

are superfluous, unneeded and certainly do not support the health of hair, skin and nails as represented.

11. As a result of the foregoing, Defendant's mega-dose Biotin Products to be taken in daily doses ranging from 2500 mcg to 3000 mcg are superfluous and unneeded and they will not and do not provide any benefits at all, let alone support healthy hair, skin and nails.

12. Thus, Defendant's health benefit representations are false, misleading and reasonably likely to deceive consumers. As a result, consumers – including Plaintiffs and members of the proposed Classes – have purchased Biotin Products that do not perform as advertised.

13. Plaintiffs bring this action on behalf of themselves and other similarly situated consumers who purchased the Biotin Products to halt the dissemination of this false, misleading, and deceptive advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the Biotin Products. Based on violations of California unfair competition law (detailed below), Plaintiffs seek injunctive and restitutionary relief for consumers who purchased the Biotin Products.

**JURISDICTION AND VENUE**

14. This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some members of the Class are citizens of a state different from Defendant.

15. This Court has personal jurisdiction over Defendant because Defendant is authorized to conduct and does conduct business in California, including this District. Defendant marketed, promoted, distributed, and sold the Biotin Products in California, and Defendant has sufficient minimum contacts with this State and/or sufficiently availed itself of the markets in this State through its promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible. In addition, the acts complained of occurred in California, as Plaintiffs read and relied upon Defendant's false

representations and were injured by their purchase of the Biotin Products in California.

16. Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events giving rise to Plaintiffs' claims occurred while they resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District and the acts complained of occurred in this judicial district, as Plaintiffs read and relied upon Defendant's false representations and were injured by their purchases of Defendant's Biotin Products in this judicial district.

## PARTIES

17. During the relevant time period, Plaintiff Eugene Anthony resided in Oakland, California. On March 5, 2017, Plaintiff Anthony was exposed to, saw and relied upon Defendant's health benefit representations by reading the Hair Skin Nails adult gummies label. He purchased the Product at a Walgreens in San Francisco, California in reliance on Defendant's health benefit representations and paid approximately $10 for the Product. The Product Plaintiff Anthony bought, in addition to containing 2500 mcg of biotin, also contains 100 mg of vitamin C per dose. Compared to the cost of Defendant's 10,000 mg vitamin C adult gummies, the value of the 100 mg of vitamin C is approximately $0.13.[4] Thus, even assuming that the vitamin C provided some sort of health benefit, Plaintiff Anthony has overpaid approximately $9.87 for the worthless 2500 mcg of biotin in the Product he bought. Plaintiff Anthony did not buy this Product because it had 100 mg of vitamin C, as that could be purchased for far less money than $10.00. Instead, Plaintiff Anthony, as well as other consumers of this Product, reasonably relied upon the health benefit representations to mean that the biotin in the Product was to provide the represented health benefits. As a result, Plaintiff Anthony and consumers of this Product were misled like consumers of Defendant's other Biotin Products because they were misled into paying

---

[4] A bottle of Defendant's vitamin C adult gummies contains 10,000 mg of vitamin C and sells for approximately $13.00. Thus, the price charged for 100 mg in Defendant's vitamin C adult gummies product is approximately $0.13. Notably absent from the benefit representations on its vitamin C adult gummies product (including immune system support) is that vitamin C may support hair, skin and nail health.

- 5 -
Class Action Complaint

substantial monies for a biotin ingredient that was worthless.

18. Had Plaintiff Anthony, as well as other purchasers of this Product, known the truth about Defendant's misrepresentations, he would not have purchased the Biotin Product. As a result, Plaintiff Anthony, as well as other consumers of this Product and consumers of Defendant's other Biotin Products, suffered the same injury in fact – being induced to purchase worthless biotin – and lost money at the time of purchase.

19. During the relevant time period, Plaintiff Amanda Holt resided in San Francisco, California. On October 6, 2017, Plaintiff Holt was exposed to, saw, and relied upon Defendant's health benefit representations by reading the Biotin 3000 mcg adult gummies label. She purchased the Product at a Walgreens in San Francisco, California in reliance on Defendant's health benefit representations and paid approximately $12.00 for the Product. The Biotin Product Plaintiff Holt purchased did not and could not provide the represented health benefits. Had Plaintiff Holt known the truth about Defendant's misrepresentations, she would not have purchased the Biotin Product. As a result, Plaintiff Holt suffered injury and lost money at the time of purchase.

20. Defendant Pharmavite, LLC is a limited liability company organized and existing under the laws of the State of California. Defendant's headquarters is at 8510 Balboa Boulevard, Mission Hills, California 91325. Defendant manufactures, distributes, markets and sells the Biotin Products to consumers nationwide, including in California.

## FACTUAL ALLEGATIONS

### *The Biotin Products*

21. Defendant manufactures, distributes, markets, and sells over-the-counter Biotin products under its Nature Made brand. This lawsuit concerns three of those products — Biotin 2500 mcg, Hair Skin Nails adult gummies, and Biotin 3000 mcg adult gummies (collectively, "Biotin Products"). The Biotin Products are marketed as supplements with the purpose of supporting healthy hair, skin and nails. The Biotin Products are sold in major food, drug, and mass retail outlets in the country including, but not limited to Walgreens, where Plaintiffs

purchased their Biotin Products. A single container of the Biotin Products retails for approximately $10.00–$23.00.

*The Uniform Health Benefits Message*

22.     Throughout the relevant time period, Defendant has consistently conveyed the health benefits message to consumers throughout California and the United States.

*Consumer Exposure to the Health Benefits Message*

23.     Each and every consumer who purchases the Biotin Products is exposed to the deceptive health benefit representations, which appear prominently and conspicuously on the front of each Biotin Product as shown below:

(Front of Hair Skin Nails adult gummies and Biotin 3000 mcg adult gummies)



(Front of Biotin 2500 mcg)

Copies of representative labels are attached hereto as Exhibit A.

*The Impact of Defendant's Wrongful Conduct*

24. Plaintiffs and Class members have been and will continue to be deceived or misled by Defendant's deceptive health benefit representations. Plaintiffs and the Class members have been damaged in their purchases of the Biotin Products and have been deceived into purchasing the Biotin Products that they believed, based on Defendant's representations, would provide them health benefits, when, in fact, they do not.

## CLASS DEFINITION AND ALLEGATIONS

25. Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seek certification of the following Class:

**Nationwide Class Action**
All consumers who, within the applicable statute of limitations

- 8 -
Class Action Complaint

period until the date notice is disseminated, purchased Biotin Products[5] in the United States.

Excluded from this Class are Defendant and its officers, directors, employees and those who purchased Biotin Products for the purpose of resale.

26. In the alternative, Plaintiffs seek certification of the following Class:

**Multi-State Class Action**
All consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased Biotin Products[6] in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington.

Excluded from this Class are Defendant and its officers, directors, employees and those who purchased Biotin Products for the purpose of resale.

27. In the alternative, Plaintiffs seek certification of the following Class:

**California-Only Class Action**
All California consumers who, within the applicable statute of limitations period until the date notice is disseminated, purchased Biotin Products.[7]

Excluded from this Class are Defendant and its officers, directors and employees, and those who purchased Biotin Products for the purpose of resale.

28. **Numerosity**. The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Plaintiffs are informed and believe that the proposed Classes contain thousands of purchasers of Biotin Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiffs.

---

[5] The Biotin Products are: Biotin 2500 mcg; Hair Skin Nails adult gummies; and Biotin 3000 mcg adult gummies. Plaintiffs reserve the right to add additional products upon completion of discovery.
[6] The Biotin Products are: Biotin 2500 mcg; Hair Skin Nails adult gummies; and Biotin 3000 mcg adult gummies. Plaintiffs reserve the right to add additional products upon completion of discovery.
[7] The Biotin Products are: Biotin 2500 mcg; Hair Skin Nails adult gummies; and Biotin 3000 mcg adult gummies. Plaintiffs reserve the right to add additional products upon completion of discovery.

29. **Existence and Predominance of Common Questions of Law and Fact**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendant's health benefit representations are false, misleading, or objectively reasonably likely to deceive;

(b) whether Defendant's alleged conduct is unlawful;

(c) whether the alleged conduct constitutes violations of the laws asserted;

(d) whether Defendant engaged in false or misleading advertising; and

(e) whether Plaintiffs and Class members are entitled to appropriate remedies, including restitution, corrective advertising, and injunctive relief.

30. **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Classes because, *inter alia*, all Class members paid money for Products containing biotin and were injured through the uniform misconduct described above as biotin does not provide the hair, skin or nail benefits represented on the front of the Product labels. Plaintiffs are also advancing the same claims and legal theories on behalf of themselves and all members of the Classes.

31. **Adequacy of Representation.** Plaintiffs will fairly and adequately protect the interests of the members of the Classes as they, like all Class members, paid money for biotin that is worthless as it does not help support healthy hair, skin or nails or provide any other health benefit. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes.

32. **Superiority.** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the

wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

33.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Classes, on grounds generally applicable to the entire Classes, to enjoin and prevent Defendant from engaging in the acts described, and requiring Defendant to provide full restitution to Plaintiffs and Class members.

34.     Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members.

35.     Unless an injunction is issued, Defendant will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be deceived.

**COUNT I**
**Violation of Business & Professions Code §17200,** *et seq.*
**Fraudulent Business Acts and Practices**
**(On Behalf of the Nationwide, Multi-State, or California-Only Class)**

36.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

37.     Plaintiffs bring this claim individually and on behalf of the Classes.

38.     As alleged herein, Plaintiffs have suffered injury in fact and lost money or property as a result of Defendant's conduct because they purchased Defendant's Biotin Products in reliance on Defendant's claim that the Biotin Products would provide them with certain health benefits, but did not receive Biotin Products that provide those benefits.

39.     Plaintiffs suffered that injury at the time of their purchases, when they bought a

product that does not deliver the benefits Defendant promises.

40. The Unfair Competition Law, Business & Professions Code §17200, *et seq.* ("UCL") prohibits any "fraudulent" business act or practice and any false or misleading advertising.

41. In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" and false, deceptive or misleading advertising by, *inter alia*, making the health benefit representations (which also constitutes advertising within the meaning of §17200) regarding the Biotin Products on the Biotin Products' labeling, as set forth more fully herein.

42. Defendant's actions, claims and misleading statements, as more fully set forth above, are false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §17200, *et seq*.

43. Plaintiffs and other members of the Classes have in fact been deceived as a result of their reliance on Defendant's material health benefit representations. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of their purchase(s) of Defendant's Biotin Products that do not provide health benefits.

44. Unless restrained and enjoined, Defendant will continue to engage in the above described conduct. Accordingly, injunctive relief is appropriate.

45. Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, seek restitution of all money obtained from Plaintiffs and the members of the Classes collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for a judgment:

A. Certifying the Classes as requested herein;

B. Awarding restitution and disgorgement of Defendant's revenues to Plaintiffs and the proposed Class members;

C. Awarding injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein;

D. Ordering Defendant to engage in a corrective advertising campaign;

E. Awarding attorneys' fees and costs; and

F. Providing such further relief as may be just and proper.

Dated: May 4, 2018

                            BONNETT, FAIRBOURN, FRIEDMAN
                                & BALINT, P.C.

                            /s/*Patricia N. Syverson*

Patricia N. Syverson (203111)
Manfred P. Muecke (222893)
600 W. Broadway, Suite 900
San Diego, California 92101
psyverson@bffb.com
mmuecke@bffb.com
Telephone: (619) 798-4593

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Elaine A. Ryan (*To be Admitted Pro Hac Vice*)
Carrie A. Laliberte (*To be Admitted Pro Hac Vice*)
2325 E. Camelback Rd., Suite 300
Phoenix, AZ 85016
eryan@bffb.com
claliberte@bffb.com
Telephone: (602) 274-1100

SIPRUT PC
Stewart M. Weltman (*To be Admitted Pro Hac Vice*)
Michael Chang (*To be Admitted Pro Hac Vice*)
17 North State Street
Chicago, Illinois 60602
sweltman@siprut.com
mchang@siprut.com
Telephone: (312) 236-0000

Attorneys for Plaintiff

- 13 -
Class Action Complaint