UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE ANTHONY, et al., <br> Plaintiffs, <br> v. <br> PHARMAVITE, <br> Defendant. | Case No. 18-cv-02636-EMC <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** <br><br> Docket No. 12 |

Plaintiffs Eugene Anthony and Amanda Holt ("Plaintiffs") bring this class action against Defendant Pharmavite, LLC ("Pharmavite"), alleging Pharmavite manufactures, markets, and sells biotin supplements through false, misleading, and deceptive advertising in violation of California's Unfair Competition Law ("UCL"). Pharmavite's labeling represents that its biotin supplements "may help support healthy hair, skin and nails." Plaintiffs allege these health benefit representations are misleading because most people obtain more than enough biotin from their daily diets, so biotin supplements are unneeded, superfluous, and will provide no health benefits. Only a minuscule percentage of individuals with biotin deficiencies could potentially benefit from biotin supplements.

Currently pending before the Court is Pharmavite's motion to dismiss.[1] *See* Docket No. 12-1 ("Mot."). For the reasons discussed at the December 20, 2018 hearing and summarized below, the motion to dismiss is **GRANTED**. Plaintiffs' claim for injunctive relief is dismissed with prejudice, and their remaining claims are dismissed with leave to amend.

---

[1] Pharmavite also asked the Court to stay these proceedings pending the Ninth Circuit's decision in *Goldman v. Bayer AG*, 742 F. App'x 325 (9th Cir. 2018). Pharmavite has since withdrawn that request in light of the Ninth Circuits remand of *Goldman* to the district court. *See* Docket No. 31.

## I.     **FACTUAL & PROCEDURAL BACKGROUND**

Pharmavite "manufactures, markets, sells, and distributes biotin supplements under its Nature Made Brand." Docket No. 1 ("Compl.") ¶ 1. At issue in this case are three of Pharmavite's biotin supplements: (1) Biotin 2500 mcg; (2) Hair Skin Nails adult gummies; and (3) Biotin 3000 mcg adult gummies (collectively, the "Biotin Products"). *Id*. The front label of the Biotin 2500 mcg product states: "May Help Support Healthy Hair, Skin & Nails*†." *Id*. Similarly, the front labels of the Hair Skin Nails adult gummies and the Biotin 3000 mcg adult gummies state: "May help support healthy hair, skin and nails†‡." *Id*. These representations are collectively referred to as the "health benefit representations." *Id*. Each health benefit representation includes either an asterisk and obelisk symbol (Biotin 2500 mcg), or dual obelisks (Hair Skin Nails adult gummies and Biotin 3000 mcg adult gummies) following the statement. *See* Mot., Exhs. A–C.

The asterisk symbol on the Biotin 2500 mcg label refers to a disclaimer on the back of the label that states: "Biotin may help support healthy hair, skin, and nails in those that are biotin deficient." Similarly, the second obelisk symbol on the Hair Skin Nails adult gummies and the Biotin 3000 mcg adult gummies labels point to a disclaimer on the back of the label that states: "May help support healthy hair, skin and nails in those deficient in biotin."

Plaintiffs purchased the Biotin Products after reading the product labels in reliance upon the health benefit representations. *Id*. However, Plaintiffs allege "the health benefit representations are false, misleading and reasonably likely to deceive the public" because the Biotin Products "will not provide any benefits" to the general population. *Id*. ¶¶ 1, 9. According to Plaintiffs, "[t]he human body only requires a finite amount of biotin on a daily basis for it to perform its enzymatic functions as there are a finite number of enzymes that use biotin." *Id*. ¶ 4. Once there is sufficient biotin in the body, any additional supplements are superfluous and the body ultimately excretes them. *Id*. ¶ 9. Citing a report by the National Academy of Sciences Institute of Medicine ("IOM report"), Plaintiffs allege that individuals over the age of 19 only require 30 micrograms of biotin per day. *Id*. ¶ 4. The only individuals who benefit from Pharmavite's pharmacological doses of biotin are those with "exceedingly rare conditions that

cause . . . biotin deficiencies—less than [0.00138] percent of the population." *Id*. ¶ 6. The remaining 99.9962 percent of the general population derives more than sufficient biotin from their daily diets.[2] *Id*. ¶¶ 4, 6. Plaintiffs allege, therefore, that apart from the 0.00138 percent of the population that is biotin deficient, the "Biotin Products are unneeded, superfluous, and completely worthless" and "will not provide any benefits." *Id*. ¶¶ 6, 9.

On May 4, 2018, Plaintiffs filed this class action complaint claiming that had they known the truth about Pharmavite's alleged misrepresentations, they would not have purchased the Biotin Products. *Id*. ¶¶ 18, 19. Plaintiffs seek relief in the form of, *inter alia*, restitution, disgorgement, a corrective advertising campaign, and injunctive relief. *Id*. ¶ 45. On August 27, 2018, Pharmavite moved to dismiss Plaintiffs' complaint on the basis that Plaintiffs failed to state a plausible claim with the particularity required by Rule 9(b), failed to state a UCL violation on the merits, and failed to demonstrate a real and immediate threat of repeated injury sufficient to sustain standing to seek injunctive relief.

## II. REQUESTS FOR JUDICIAL NOTICE

Both parties ask the Court to take judicial notice of certain materials. On a Rule 12(b)(6) motion to dismiss, evidence beyond the pleading should not be considered unless: 1) the document is attached to or incorporated by reference into the complaint; or 2) the fact is subject to judicial notice pursuant to Federal Rule of Evidence 201. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

The Court **GRANTS** Pharmavite's request for judicial notice of the labels for the three Biotin Products at issue, Docket Nos. 12-3, 12-4, 12-5, because Plaintiffs reference and necessarily rely upon the labels throughout the complaint. *See Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012) ("Courts often take judicial notice of packaging labels in false advertising suits when neither party objects to the authenticity of the label and the labels are central to the plaintiff's complaint.").

---

[2] The complaint originally alleged that less than 0.000138 percent of the population is biotin deficient and that 99.99962 percent is not biotin deficient. Plaintiffs' opposition brief corrects these figures to 0.00138 and 99.9962 percent. *See* Docket No. 19 at 1 n.2.

3

United States District Court
Northern District of California

1  The Court **DENIES** Pharmavite's request for judicial notice of the IOM report, Docket No. 12-6, and the National Institute of Health Biotin Fact Sheet, Docket No. 12-7, because Pharmavite cites them to raise factual disputes as to the relative rarity of biotin deficiencies in the population that are not appropriate for resolution on a motion to dismiss. *See Banks v. Clark Cty., Nev.*, 461 F. App'x 585, 587 (9th Cir. 2011) (denying judicial notice of document that "proffers irrelevant factual evidence on a motion which tests only the sufficiency of the allegations of the amended complaint").

The Court **DENIES** Pharmavite's remaining requests, and Plaintiffs' requests for judicial notice, because the materials they reference are not necessary for the resolution of this motion.

### III.     LEGAL STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss, a court must take all allegations of material fact as true and construe them in the light most favorable to the plaintiff, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

Because Plaintiffs' UCL claim sounds in fraud, their complaint must also meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Rule 9(b) requires a party alleging fraud or mistake to state with particularity the circumstances constituting fraud or mistake. To satisfy this standard, the "complaint must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (citation and internal quotation

marks omitted).

If the Court determines that the complaint should be dismissed for failure to meet the pleading standards of Rule 8(a) or Rule 9(b), it must then decide whether to grant leave to amend. In the absence of an apparent reason such as "futility of amendment," leave to amend should "be 'freely given.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**IV.     DISCUSSION**

A.     UCL Claim

The UCL prohibits any "unlawful, unfair[,] or fraudulent business act or practice," including engaging in "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Here, Plaintiffs assert their claim under the "fraudulent" prong of the UCL. *See* Compl. ¶¶ 40–42. To state a claim under this prong, a plaintiff must show that a "reasonable consumer" is "likely to be deceived" by the allegedly misleading statement. *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (citations and quotation marks omitted). The "reasonable consumer" is not necessarily a "particularly sophisticated consumer." *See Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013). "To the contrary, questions of judgment calling for the perspective of a reasonable consumer are 'determined in the light of the effect [such a question] would most probably produce on ordinary minds.'" *Id.* (quoting *Donaldson v. Read Magazine*, 333 U.S. 178, 189 (1948)). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Ct. App. 2003). "Rather, the phrase indicates that the ad is such that it is *probable* that a *significant portion* of the general consuming public or of targeted consumers, acting *reasonably* in the circumstances, *could be misled*." *Id.* (emphases added).

Courts have repeatedly emphasized that the reasonable consumer analysis is "usually . . . a question of fact not appropriate for decision on" a motion to dismiss. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). The case law cited by both Plaintiffs and Pharmavite reinforce the notion that "[g]ranting a motion to dismiss is appropriate only in 'the rare situation'

5

where 'the advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived,'" *Coe v. Gen. Mills, Inc.*, No. 15-CV-05112-TEH, 2016 WL 4208287, at *5 (N.D. Cal. Aug. 10, 2016) (quoting *Williams*, 552 F.3d at 939), or, similarly, where "no reasonable consumer" would be misled by the advertisement, *Williams*, 552 F.3d at 939.

Here, the Court cannot conclude as a matter of law that no reasonable consumer would be misled by the labeling on the Biotin Products. The labels declare in prominent font that the Biotin Products "May help support healthy hair, skin and nails." A reasonable consumer, representing a significant portion of the population, could understand this representation to mean that there is a possibility that he/she will experience benefits to his/her hair, skin, and nails from using the Biotin Products. But, as Plaintiffs allege, the vast majority of the population—well over 99.9 percent—cannot possibly derive any benefits from the Biotin Products, because all but the rarest of individuals already receive more than enough biotin from their daily diets. Hence, for virtually all consumers, the term "may" overstates the chances of obtaining any benefit. Accordingly, assuming the truth of Plaintiffs' allegations, "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the health benefit representation into believing that the Biotin Products might support healthy hair, skin, and nails. *Lavie*, 105 Cal. App. 4th at 508.

Although courts have recognized that qualifying phrases or statements may be material to determining a reasonable consumer's understanding, *see Koehler v. Litehouse, Inc.*, No. CV 12-04055 SI, 2012 WL 6217635 (N.D. Cal. Dec. 13, 2012) ("may" "indicates a possibility or probability that an event will occur," so "reasonable consumers would likely understand that if the Product claims it 'May boost immunity' . . . , there exists only a possibility or a probability that it will boost their immunity or enhance their body's immune system"), "may" is misleading here because 99.9962 percent of people have *no* possibility of benefiting from the Biotin Products.[3]

---

[3] Pharmavite disputes the scientific bases for Plaintiffs' claims that biotin supplements are effectively useless for those who are not biotin deficient, and that the percentage of the population that is biotin deficient is "seemingly infinitesimal." Mot. at 16 n.7. However, for purposes of a motion to dismiss, the Court is required to accept Plaintiffs' plausible allegations of fact as true. *See Greenberg v. Target Corp.*, No. 17-CV-01862-RS, 2017 WL 9853748, at *3 (N.D. Cal. Aug.

6

*See* Docket No. 19 ("Opp.") at 11. A reasonable consumer could understand "may" to mean a reasonable possibility or a reasonable probability, rather than merely a vanishingly small possibility on the order of 0.00138 percent.

As for the asterisk directing consumers to the disclaimer about biotin deficiency, there are two problems. First, there is a question of fact whether a reasonable consumer would notice it and follow it to the disclaimer. *See* Part IV.B., *infra*; *Madenlian v. Flax USA Inc.*, 13-01748 JVS, 2014 WL 7723578, at *3 n.3 (C.D. Cal. Mar. 31, 2014) (holding that "the extent to which [an asterisk and] additional language clarifies the ambiguity of the [challenged] representation is a fact question not suitable for resolution" at the motion to dismiss stage). The Ninth Circuit has rejected the premise that "reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the . . . small print on the side of the box." *Williams*, 552 F.3d at 939; *see Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 696 (Ct. App. 2018) ("You cannot take away in the back fine print what you gave on the front in large conspicuous print. The [back of the label] must *confirm* the expectations raised on the front, not contradict them.") (emphasis in original). Relying on *Williams*, the Court in *Sperling v. Stein Mart, Inc.*, No. CV1501411BROKKX, 2016 WL 11265686 (C.D. Cal. Mar. 15, 2016) ruled that "it would be error . . . to expect reasonable consumers to look beyond Defendant's" misleading representations to find a clarifying definition elsewhere, "even though Defendant included an asterisk immediately following the [misleading representation]" directing consumers to the clarifying definition. *Id.* at *5. Here, the sufficiency of the asterisk flagging the disclaimer is at least a question of fact.

Second, even assuming a reasonable consumer would follow the asterisk, it cannot be concluded as a matter of law that the substance of the disclaimer "Biotin may help support healthy hair, skin and nails in those that are biotin deficient" would be sufficient to disabuse the consumer of any misconceptions engendered by the health benefit representations. For instance, the disclaimer does not state that the Biotin Products would *not* benefit those who are not biotin

---

28, 2017) (finding that plaintiff has "allege[d] a plausible metabolic explanation for why [defendant]'s health benefit representations about its biotin supplements are false").

7

deficient. Nor does it explain that exceedingly few people are in fact biotin deficient. A reasonable consumer, experiencing hair, skin or nail problems, might plausibly believe he or she has a biotin deficiency or would otherwise benefit from the product. Accordingly, in view of the promises of the health benefit representation on the labels, "[t]he Court cannot find that Defendant's [disclaimer] is so unambiguous and express such that a reasonable consumer is unlikely to be deceived as a matter of law" by the health benefit representations on the Biotin Products. *Sperling*, 2016 WL 11265686 at *5.

B.  Rule 9(b)

However, the Court does find that Plaintiffs' complaint is lacking in the particularity of pleading required by Rule 9(b). The complaint is devoid of any allegations regarding whether Plaintiffs saw the asterisk, read the corresponding disclaimer, and if they did read it, how the disclaimer affected their purchasing decision. In fact, the complaint makes no mention of the asterisk or disclaimer at all. Plaintiffs merely allege, in vague and general fashion, that they "saw and relied upon Defendant's health benefit representations by reading the [Biotin Product] label," and "purchased the Product . . . in reliance on Defendant's health benefit representations." Compl. ¶¶ 17, 19. They do not specify what part of the labels and representations they saw and relied upon. *See Chase v. Hobby Lobby Stores, Inc.*, No. 17-CV-00881-GPC-BLM, 2017 WL 4358146, at *9 (S.D. Cal. Oct. 2, 2017) (dismissing false advertising claim for failure to satisfy Rule 9(b) because plaintiff did not allege whether she saw the asterisk in the challenged advertisement or if she read the corresponding disclaimer); *Sperling*, 2016 WL 8925347, at *8 (dismissing false advertising claim because complaint "fails to adequately plead, with any particularity," any allegations regarding the asterisk on defendant's price tags that directs consumers to defendant's pricing policy). Even though this lack of specificity does not affect the motion to dismiss under Rule 12(b)(6), it is material to this litigation, possibly affecting, *e.g.*, standing.

Accordingly, the complaint is **DISMISSED** with leave for Plaintiffs to amend to plead with the particularity required by Rule 9(b) what they saw, relied upon, and understood with respect to Pharmavite's labeling.

8

C. <u>Injunctive Relief</u>

Pharmavite argues that Plaintiffs lack Article III standing to seek injunctive relief because their complaint does not adequately allege they face an imminent or actual threat of future harm caused by Pharmavite's allegedly false advertising. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) ("For injunctive relief, which is a prospective remedy, the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'") (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Until recently, "[t]he Ninth Circuit ha[d] not addressed the specific question . . . [and] district courts within this circuit [we]re divided about whether a plaintiff seeking to bring injunctive relief claims over deceptive labeling can establish Article III standing once they are already aware of an alleged misrepresentation." *Pinon v. Tristar Prods., Inc.*, 2016 WL 4548766, at *4 (E.D. Cal. Sept. 1, 2016).

However, the Ninth Circuit recently spoke on the issue. It held in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018) that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id.* at 969 (citing *Summers*, 555 U.S. at 493). Examples of actual and imminent harm the *Davidson* court provided include cases where "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," and where "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

Courts have cautioned that *Davidson*'s "conclusion is narrower than a blanket conclusion that plaintiffs seeking injunctive relief in mislabeling class actions *always* have standing." *Martin Schneider, et al., v. Chipotle Mexican Grill, Inc.*, 2018 WL 4700353, at *2 (N.D. Cal. Sept. 29, 2018) (emphasis added). "The principle set forth in *Davidson* is more accurately cast as the court's 'not [being] persuaded that injunctive relief is *never* available for a consumer who learns

9

after purchasing a product that the label is false.'" *Id.* (emphasis in original) (citations omitted). This point is illustrated in *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (Mem) (9th Cir. 2018), where the Ninth Circuit dismissed a claim for injunctive relief because the plaintiff "stated that she would not purchase Twinings products again, even if the company removed the allegedly misleading labels," and therefore did not face an imminent or actual threat of future harm. *Id.* at 590–91.

Similarly to the plaintiff in *Lanovaz*, Plaintiffs here cannot show that they will face an imminent or actual threat of future harm absent an injunction against Pharmavite. For one thing, they do not allege they intend to purchase the Biotin Products again in the future. In fact, Plaintiffs allege "had [they] known the truth about [Pharmavite's] misrepresentations, [they] would not have purchased the Biotin Product." Compl. ¶¶ 18–19. More critically, Plaintiffs' claim is predicated on the premise that, as a matter of scientific fact, biotin supplements "are unneeded, superfluous, and will not provide any benefits" to anyone without a biotin deficiency. *Id.* ¶ 9. Thus, this is not a situation, like in *Davidson*, where Plaintiffs "would [still] like to" purchase biotin supplements in the future if Pharmavite's advertising were more truthful, or if Pharmavite "improved" its Biotin Products. *Davidson*, 889 F.3d at 969–70. The import of Plaintiffs' allegations is that Pharmavite can do nothing to alter its advertising or product to make biotin supplements beneficial to Plaintiffs. Plaintiffs do not face the "injury of being unable to rely on [Pharmavite]'s representations of its [Biotin Products] in deciding whether or not [they] should purchase the [Biotin Products] in the future." *Id.* at 971–72. They therefore do not have standing to seek injunctive relief.

Plaintiffs alternatively suggest that standing lies in "[c]lass members [who] have been and will continue to be deceived or misled by [Pharmavite's] deceptive health benefit representations" because they do not yet know the representations are inaccurate. Opp. at 20. But it is well-established that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *In Re Apple & AT & TM Antitrust Litigation*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) (quoting *Lewis v. Casey*, 518 U.S. 343,

347 (1996)).

Accordingly, Plaintiffs' claim for injunctive relief is **DISMISSED with prejudice**.

### V. CONCLUSION

For the foregoing reasons, Plaintiffs' claim for injunctive relief is **DISMISSED with prejudice**. Plaintiffs' remaining claims are **DISMISSED without prejudice** under Rule 9(b) but not under Rule 12(b)(6). Plaintiffs shall have sixty (60) days to amend their complaint.

This order disposes of Docket No. 12.

**IT IS SO ORDERED**.

Dated: January 4, 2019

_____
EDWARD M. CHEN
United States District Judge